Mark P. Robinson, Jr., State Bar No. 54426
*mrobinson@robinsonfirm.com*
Kevin F. Calcagnie, State Bar No. 108994
*kcalcagnie@robinsonfirm.com*
Tracy E. Hughes, State Bar No. 180494
*thughes@robinsonfirm.com*
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, California 92660
Tel:   949-720-1288
Fax:   949-720-1292

*Attorneys for Plaintiffs DEBORAH GARCIA
And TONYA MUNDY*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| DEBORAH GARCIA and TONYA MUNDY, individually and on Behalf of All Others Similarly Situated,<br><br>         Plaintiffs,<br><br>         vs.<br><br>TRUVISION HEALTH, LLC, d/b/a TRUVY, a Utah Corporation; DAVID BROWN, an individual; DERRICK RAYNES, an individual; MATTHEW DEAN PETERSEN, an individual; and SCOTT LAMB, an individual,<br><br>         Defendants. | **CASE NO**.<br><br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Deborah Garcia and Tonya Mundy ("Plaintiffs"), individually and on behalf of the class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge. Plaintiffs bring this action for damages, restitution, and injunctive relief against TruVision Health, LLC, d/b/a "Truvy"; David Brown; Derrick Raynes; Matthew Dean Petersen; and Scott Lamb (collectively, "Defendants"), demanding a trial by jury.

## NATURE OF THE ACTION

1.      Plaintiffs bring this class action against Defendants to recover damages, restitution, and other relief available at law and in equity on behalf of themselves and members of the following class ("Class") and subclass ("Subclass"):

*Class*:
*All United States current or former Truvy Associates who purchased TruVision Health, LLC d/b/a "Truvy" products containing hordenine and/or octodrine/1,5-dimelthylhexylamine ("DMHA") from 2014 through July 1, 2023.*

*Subclass*:
*All California current or former Truvy Associates who purchased TruVision Health, LLC d/b/a "Truvy" products containing hordenine and/or octodrine/1,5-dimelthylhexylamine ("DMHA") from 2014 through July 1, 2023.*

2.      TruVision Health, LLC, d/b/a "Truvy," is a private corporation based in Draper, Utah.  Truvy develops, manufactures, and sells nutritional supplements to customers who ingest these products for various reasons, including to lose weight, increase energy, or improve physical fitness and health in other ways.  The Truvy

website proclaims Truvy to be a "Whole Health Sidekick,"[1] and claims that "Truvy® products contain the fundamentals to help … promote your physical and mental well-being."[2]

3.    A self-proclaimed "health and wellness" company,[3] Truvy markets, sells, and distributes a variety of nutritional supplements through a multi-level marketing system of contracted "Associates." Associates are in turn encouraged to recruit new associates who will purchase and sell Truvy products. On information and belief, over 75% of consumers of Truvy products are Truvy Associates.

4.    Truvy's leading products are weight loss products. These include: TruCONTROL 60-Count; TruControl 7-Day Trifold; reFORM; truControl with Dynamine 60-Count; TruWeight and Energy Gen 2+ 60 Count; TruWeight and Energy Gen 2+ Trifold; Truvy 30-Day Experience Kit; Truvy 7-Day Experience Kit; Truvy Boost 30-Day Experience Kit; TruBoost 7-Day Experience Kit; TruBoost Drink—Citrine Spark; and TruBoost Drink—Ruby Rev (hereinafter the "Subject Products").

5.    On its product containers, its website, and in various advertisements, Truvy claims its products are "safe, effective, and affordable [and] backed by science."[4] The Truvy website also claims that the "[Truvy] Products Work. Period."[5]

6.    In fact, specific lots of the Subject Products were recalled for containing unapproved and potentially dangerous ingredients, including hordenine and/or octodrine/1,5-dimelthylhexylamine ("DMHA"). The U.S. Food & Drug Administration issued a notice of this recall and a warning about adverse health effects associated with these products on April 27, 2023 (hereinafter, the "FDA

---

[1] Truvy Home Page, https://www.truvy.com/?ref=www (last visited June 22, 2023).
[2] *About Us*, Truvy, https://www.truvy.com/about?ref=www (last visited June 22, 2023).
[3] Truvy Home Page, *supra*.
[4] *About Us*, *supra*.
[5] *Id*.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Notice").[6] The unapproved ingredients contained in the Truvy Subject Products have been linked to serious side effects, including elevated heart rate, high blood pressure, nausea, vomiting, and insomnia.

7.    On information and belief, Defendants, and each of them, knew or should have known the Subject Products contained unapproved ingredients with potentially harmful side effects, and continued to knowingly market and sell these products.

8.    Subject Products such as TruVy Boost were expensive, priced at approximately $100 for a 30-day supply.  Truvy's marketing and promotional materials fundamentally claimed that Truvy products:

> a. contained the ingredients listed on the labels;
>
> b. contained no unapproved or illegal ingredients; and
>
> c. contained legal and safe ingredients.

9.    Plaintiffs are also informed and believe and thereon allege that Defendants falsely claimed that weight loss products, including the Subject Products, promoted weight loss through the mechanism of a "proprietary blend" of ingredients such as "Alpha-lipoic Acid (ALA), Magnesium, Raspberry Keytones[sic], and Cinnamon Bark extract;"[7] and "Potato Extract," and "Hydrolyzed Brewer's Yeast Extract."[8]

---

[6] *TruVision Health Recalls Dietary Supplement Products Because of Possible Health Risk*, FDA (Apr. 27, 2023), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/truvision-health-recalls-dietary-supplement-products-because-possible-health-risk.

[7] Kyler Schofield, *Truvy Boost Drink*, Truvy, https://help.truvy.com/hc/en-us/articles/6978888744083-Truvy-Boost-Drink (last visited June 22, 2023).

[8] *Tru+ & Vy Associate Announcement*, Truvy, at 10:18, https://vimeo.com/user103524329/review/753121769/81a9d0dac1 (last visited July 11, 2023).

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

10.    In fact, on information and belief, unapproved substances including hordenine and/or octodrine/DMHA were widely used by Defendants as key ingredients to promote weight loss in the Subject Products, particularly in product samples such as the Experience Kits, well before the product recall.   Some product labels included the unapproved ingredients; others did not.

11.    On information and belief, Defendants, and each of them, knew large numbers of their products contained unlawful ingredients such as hordenine a year or more before the product recall.  In a 2022 Tru+ & Vy Associate Announcement (see screenshot below), Defendants announced a new formulation of their Tru and Vy products containing the "[s]ame core ingredients as Vy, with hordenine and synephrine removed."[9] Hordenine was one of the unapproved dietary ingredients identified in the recall of the Subject Products. Synephrine is another unapproved dietary ingredient with effects similar to Ephedra.[10]

---

[9] *Tru+ & Vy Associate Announcement*, Truvy, at 10:18, https://vimeo.com/user103524329/review/753121769/81a9d0dac1 (last visited July 11, 2023).

[10] *Methylsynephrine in Dietary Supplements*, FDA (Feb. 22, 2023), https://www.fda.gov/food/dietary-supplement-ingredient-directory/methylsynephrine-dietary-supplements.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL



12.     Hordenine and synephrine are "new dietary ingredients" (i.e., dietary ingredients not marketed in the United States before October 15, 1994) under section 413(d) of the FD&C Act [21 U.S.C. § 350b(d)].  Under section 413(a) of the FD&C Act [21 U.S.C. § 350b(a)], a dietary supplement that contains a new dietary ingredient shall be deemed adulterated under section 402(f) of the FD&C Act [21 U.S.C. § 342(f)] unless it contains only dietary ingredients that have been present in the food supply in a form in which the food has not been chemically altered; or if there is a history of another approved use and other evidence of safety. Neither exception is true for hordenine or synephrine. The introduction into interstate commerce of dietary supplements that are adulterated under sections 402(f) and 413(a) of the FD&C Act is prohibited under sections 301(a) and (v) of the FD&C Act [21 U.S.C. § 331(a) and (v)].

13.     Plaintiffs Tonya Mundy and Deborah Garcia each experienced elevated heart rate, nausea, and malaise while taking the Subject Products.  During the time she ingested the Subject Products, Plaintiff Tonya Mundy visited the emergency room on

three separate occasions with physical symptoms consistent with those documented in the FDA Notice.[11]

14.    Plaintiffs were unaware while suffering side effects that the Subject Products contained any unapproved or potentially dangerous ingredients. They believed Defendants' claims that the Subject Products, and Truvy products generally, were safe and effective and promoted health and well-being.

15.    Defendants' claims regarding the health benefits, safety and efficacy of the Subject Products were patently false. As a result, on information and belief, tens of thousands of consumers have purchased these products relying on these and other misrepresentations and have experienced adverse side effects related to their consumption of the Subject Products. Had Plaintiffs and Class members been aware of the presence of unapproved ingredients in the Subject Products, they would not have purchased them.

## **THE PARTIES**

16.    Plaintiff Deborah Garcia is a resident of Monterey County, California, and has previously purchased and used the Truvy Subject Products. She suffered side effects consistent with those described in the FDA Notice during the time period she ingested the Subject Products. Based on representations of "substantial income," Ms. Garcia signed up to work as a Truvy Associate independent contractor in late 2018, and stopped working as a Truvy Associate independent contractor in March 2023.

17.    Plaintiff Tonya Mundy is a resident of Chandler, Arizona, and has purchased and used the Subject Products, and other Truvy dietary supplements and products, since late 2018. She suffered side effects consistent with those described in the FDA Notice during the time she ingested the Subject Products. Plaintiff

---

[11] *TruVision Health Recalls Dietary Supplement Products Because of Possible Health Risk*, FDA (Apr. 27, 2023), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/truvision-health-recalls-dietary-supplement-products-because-possible-health-risk.

Mundy sought medical assistance on multiple occasions for symptoms consistent with those described on the FDA Notice. Plaintiff Mundy signed on with Truvy as an Associate based on representations that a typical Truvy Associate makes "substantial income," and believed Defendants' representations about additional potential income and bonuses.  Plaintiff Mundy stopped working as a Truvy independent contractor the first week of May 2023.

18.    Plaintiffs are informed and believe that Defendant TruVision Health, LLC, d/b/a "Truvy" is a Utah corporation doing business in the State of California, throughout the United States, and internationally. Truvy's principal place of business and corporate headquarters is located at 172 E 14075 S, Draper, UT 84020.  Truvy advertises, promotes, markets, manufactures, and sells dietary supplements and certain other products primarily through a multi-level marketing model of contracted independent distributors who are required to purchase products directly from Truvy.

19.    Plaintiffs are informed and believe that defendant David Brown ("Brown") is the founder, Chief Executive Officer, Co-Owner, and President of Truvy and is a resident of South Jordan, Utah. Plaintiffs are informed and believe that Brown is a managing agent and/or principal of or in defendant Truvy and that Brown and Truvy are alter egos.

20.    Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, there existed a unity of interest and ownership between Brown and Truvy such that any individuality and separateness between them have ceased; that Truvy was and/or is dominated and controlled by Brown, such that the assets of the corporation were treated as property of Brown; that they disregarded corporate formalities, and commingled assets and records to suit their convenience and whim; and that fraud and injustice would thus be promoted by adhering to the fictions of Brown and Truvy remaining separate and apart from each other, and they should not be allowed to evade justice by asserting the corporate or other limited liability veil.

/ / /

21. Plaintiffs are informed and believe that defendant Derrick Raynes ("Raynes") is the Chief Sales and Marketing Officer and Co-Owner of Truvy and is a resident of Draper, Utah. Plaintiffs are informed and believe that Raynes is a managing agent and/or principal of or in defendant Truvy.

22. Defendant Scott Lamb ("Lamb") is a resident of Lehi, Utah and the Chief Financial Officer of Truvy and Co-Owner of the company. Plaintiffs are informed and believe that Lamb is a managing agent and/or principal of or in defendant Truvy.

23. Defendant Matthew Dean Petersen ("Petersen") is a resident of Sandy, Utah and is the Chief Associate Experience Officer of Truvy and Co-Owner of the company. Plaintiffs are informed and believe that Peterson has an ownership interest in Truvy.

## JURISDICTION AND VENUE

24. Pursuant to 28 U.S.C. Section 1332, as amended by the Class Action Fairness Act of 2005, this Court has subject matter jurisdiction over this nationwide class action because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and members of the Class are residents of, or entities formed under, states other than California. (*See* 28 U.S.C. Section 1332(d)(2)(A).)

25. This Court has personal jurisdiction over each defendant, and venue is proper in this district, pursuant to 28 U.S.C. Section 1391, subsections (a) and (c), because, among other things, Defendants have purposefully availed themselves of the privilege of conducting business activities in California, where they marketed and sold the products at issue in this lawsuit to Plaintiff Garcia and other members of the proposed class. Venue is also proper in this district, as some of the transactions at issue arose in this district and class members are residents of this district.

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**DIVISIONAL ASSIGNMENT**

26.    Pursuant to Civil L.R. 3-2(c), assignment to this Division is proper because a substantial part of the conduct which gives rise to Plaintiff Deborah Garcia and other class member claims occurred in Monterey County. Pursuant to Civil L.R. 3-2(e), all civil actions arising in Monterey County shall be assigned to the San Jose Division.

**FACTUAL ALLEGATIONS**

27.    Although the claims of various supplement makers vary, in general these products are touted as promoting users' health and/or physical fitness in various ways, such as purportedly causing users to lose weight, improve health, increase strength, improve stamina, and increase energy.

28.    Defendant TruVision Health, LLC, d/b/a "Truvy," is an international manufacturer, distributor, and seller of dietary supplements. Truvy claims to "offer[] a variety of natural products and supplements for your health and wellness goals."[12] Customers ingest these products for various reasons, including to lose weight, increase energy, or improve physical fitness and health in other ways. The Truvy website proclaims that "Truvy® products contain the fundamentals to help … promote your physical and mental well-being."[13]

29.    Defendants have a history of misrepresenting the nature, characteristics, safety, and efficacy of TruVision Health, LLC products. TruVision Health, LLC, was the subject of an FDA Warning Letter in November of 2017. The letter advised Defendants that a 2017 inspection of TruVision Health, LLC facilities:

> …revealed serious violations of FDA's Current Good Manufacturing Practice (CGMP) in Manufacturing, Packaging, Labeling, or Holding Operations for Dietary Supplements, Title 21, Code of Federal Regulations (CFR), Part 111 (21 CFR Part 111). These violations cause your

---

[12] Truvy Home Page, https://www.truvy.com/?ref=www (last visited June 22, 2023).
[13] *About Us*, Truvy, https://www.truvy.com/about?ref=www (last visited June 22, 2023).

1    dietary supplement products to be adulterated within the
2    meaning of section 402(g)(1) of the Federal Food, Drug,
     and Cosmetic Act (the Act) [21 U.S.C. § 342(g)(1)] in that
3    the products have been prepared, packed, or held under
     conditions that do not meet CGMP requirements for dietary
4    supplements.[14]

5    30.    TruVision Health, LLC was also subject to a California Proposition 65

6    action in 2020 for the presence of lead in an amount exceeding 0.5 micrograms per

7    day without a warning in some of its dietary supplements.[15]  Lead is a carcinogen and

8    neurotoxin and accumulates in the body.  The California Health and Safety Code §§

9    25249.1, *et seq.*, requires a warning label for exposures over 0.5 micrograms of lead

10   per day.    Defendants were ordered to place warning labels on product sold in

11   California exceeding the 0.5 microgram per day legal limit for lead.[16]

12   *Product Claims & Ingredients*

13   31.    Truvy claims that it "formulate[s] all of our products using real science,

14   powerful and high-quality ingredients that really work, and no gimmicks."[17]  Truvy's

15   leading products are weight loss products (the Subject Products).    The Subject

16   Products were marketed at different times, sometimes overlapping, from 2018

17   through the present.  On information and belief, some of the Subject Products were in

18   fact products previously introduced by Truvy but repackaged under different names.

19   Truvy has marketed the Subject Products and other dietary supplements since its

20   formation in 2014.

21

22   [14] *Warning Letter: TruVision Health* LLC, FDA (Nov. 29, 2017),
23   https://www.fda.gov/inspections-compliance-enforcement-and-criminal-
     investigations/warning-letters/truvision-health-llc-532286-11292017.

24   [15] Stipulated Consent Agreement, *Environmental Research Center v. TruVision
25   Health, LLC,* No. RG20061648 (Cal. Super. Ct., May 19, 2020),
     https://oag.ca.gov/system/files/prop65/settlements/2020-00433S8610.pdf.

26   [16] *Id*.

27   [17] *About Us*, Truvy, https://www.truvy.com/about?ref=www (last visited June 22,
28   2023).

32.    On its product containers, on its website, and in various advertisements, Defendants claim Truvy products are "safe, effective, and affordable [and] backed by science."[18]

33.    However, Truvy products are not naturally "safe" and "effective," as suggested in their promotional materials and on their website.[19]    Defendants acknowledged the presence of unapproved and potentially dangerous dietary ingredients in 2022 product reformulations, the year before the limited Subject Product recall.  The unapproved ingredients in supplements render the affected Subject Products adulterated.

34.    The presence of harmful and unapproved ingredients and their related harmful health effects were only formally disclosed to Truvy Associates who had purchased the specified lot numbers of the identified products within 30 days of the FDA Notice.  Plaintiff Mundy learned of the FDA Notice before any notification from Truvy, on May 1, 2023. No notice was provided by Defendants to Truvy Associates until May 3, 2023.

35.    Specific lots of each of the Subject Products were recalled on April 27, 2023, for containing hordenine and/or octodrine/1,5-dimelthylhexylamine (DMHA). These substances have not been approved by the U.S. Food & Drug Administration for human consumption. On information and belief, the pool of affected products was vastly larger than the identified recalled lots and included every Truvy weight loss "sample."

36.    The unapproved ingredients in Truvy Subject Products have been linked to dangerous side effects.  Hordenine has been linked to rapid heart rate, high blood pressure, jitteriness, nausea, nervousness, vomiting, and insomnia.  Hordenine is not an approved dietary ingredient in dietary supplements.

---

[18] *About Us*, Truvy, https://www.truvy.com/about?ref=www (last visited June 22, 2023).

[19] *Id.*

37.    Octodrine or 1,5-Dimethlhexylamine (DMHA) does not meet the statutory definition of a dietary ingredient and is an unsafe food additive.  DMHA is not an approved ingredient for human consumption in the United States, and the FDA Notice warns that this substance is "potentially dangerous" to humans. In animal studies, octodrine has been found to increase heart rate, myocardial contractility, and pain threshold.  No data exists on the metabolic pathway in humans.[20]

38.    Octodrine appears to be chemically similar to another stimulant called dimethylamylamine (DMAA), which was removed from the market in certain countries due to safety concerns.  In the medical literature, DMAA has often been described as a synthetic stimulant similar to amphetamines that can constrict blood vessels, raise blood pressure and heart rate, and potentially increase the risk of heart attacks and strokes.[21]

39.    In a classic "bait-and-switch," Defendants promised that ingredients such as Raspberry Ketones, Potato Extract, and Hydrolyzed Brewer's Yeast were the operative ingredients in their Subject Products to promote health, energy and weight loss.  These claims were categorically false.  In fact, the Subject Products contained unknown dosages of unapproved ingredients that put consumers' health at risk. The marketing, distribution, and sale of the Subject Products was thus false, misleading, and fraudulent.

40.    Defendants offered refunds for specific lot numbers of the Subject Products only for products purchased in the last 30 days, even where Subject Products purchased prior to that time limit also contained the harmful ingredients.

41.    In fact, on information and belief, Defendants had knowledge of the presence of the unlawful and hazardous ingredients in the Subject Products and were

---

[20] *TruVision Health Recalls Dietary Supplement Products Because of Possible Health Risk*, FDA (Apr. 27, 2023), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/truvision-health-recalls-dietary-supplement-products-because-possible-health-risk.

[21] Natash Singer & Peter Lattman, *A Workout Booster, and a Lawsuit*, NY Times (Feb. 13, 2013), https://www.nytimes.com/2013/02/14/business/death-after-use-of-jack3d-shows-gap-in-regulation.html.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

knowingly including them in their product formulations well before the product recall. Octodrine and hordenine appear on product labels for some of the Subject Products dating back to 2018.

42. Defendants also had knowledge of the side effects associated with these ingredients. According to the Truvy website, "false positive[s] for amphetamines on drug tests" were reported for those taking "Vy capsules," "Truvy Boost capsules," and "Truvy Boost drinks."[22] Truvy FAQs also includes references to reported side effects consistent with those described in the FDA Notice.

43. Defendants claimed to have replaced Octodrine HCL in "Vy" products with "Theobromine and Rauwolscine" in a 2022 product reformulation.[23] While Defendants claim that Rauwolscine is a "great stimulant [that] helps the body maintain a healthy weight," Rauwolscine is another unapproved dietary ingredient, and Defendants provide no information about the amount in each dose of its products.[24]

*Sales and Recruitment Practices*

44. Truvy uses a multi-level marketing model as its primary mode of product distribution. On information and belief, during the time period alleged in this complaint Truvy had approximately 100,000 contracted Associates to market–and purchase–Truvy products.

---

[22] *Product FAQ's*, Truvy, https://help.truvy.com/hc/en-us/articles/6348835338771-Product-FAQ-s- (last visited June 23, 2023).

[23] *Id.*

[24] In another undated product FAQ for truIGNITE a.k.a truCONTROL with Dynamine, Defendants claim to have replaced Octodrine with Dynamine (Methylliberine)." Several truCONTROL products are among the Subject Products recalled. On information and belief, the new formulation also caused adverse side effects.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

45.    Defendants misrepresented the ease of generating income by selling Truvy products. One online recruitment site promised:

> Great news! There's nothing limiting the number of people with whom you can share TruVision! That means that the amount of compensation you receive is only dependent on you own individual goals and objective. In other words, the sky and you are the only limits.
>
> **It's a Way to Make Easy Money**
>
> With our Fast Start Program, we help associates earn back their initial investments quickly. Truvy also offers a Matching Bonus of 10 percent on all personally enrolled Associates who generate a unilevel commission check. Most popular direct selling companies you can work for only provide this bonus for their highest ranks. At Truvy, we start the matching bonus from day one.[25]

46.    According to the Truvy Compensation Plan, Associates are able to receive compensation from TruVy for signing up new "downline" Associates and a monthly check for $50.[26]   Associates receive a decreasing percentage of revenue from downline associates on their team; for example; 7% of the first level down, and 6% of the next level down.  As Associates recruit new associates, their "upline team leader" continues to receive percentages of the respective downline Associates' sales.[27]

47.    Defendants also used and use testimonials to promote income opportunities related to the use and sale of Truvy products:

---

[25] *Try. Share. Repeat. (How to Earn an Income With Truvy)*, 4 Incredible Change, https://www.4-ic.com/opportunity/ (last visited June 27, 2023).

[26] *Compensation Plan*, Truvy, https://help.truvy.com/hc/en-us/articles/15514669409811-Compensation-Plan (last visited June 22, 2023).

[27] *Id.*

> With Truvy™ I found a product that actually worked for me. It's one of a kind. Within days, and I have people within hours, start making money right away. You can't do that with any other kind of business. It's a no brainer.
>
> — Ryan Higgins[28]

48.    Truvy has a mandatory "Personal Value" (hereinafter, "PV") quota for Associates, however, which varied between 75 and 200 PV between 2018 and 2023. A PV of 75 is the approximate equivalent of $100. With shipping costs, the approximate monthly expenditure for Truvy Associates with a 75 PV is $125; a PV of 100 is the approximate equivalent of a $150 or more monthly expenditure; and a PV of 200 equates to an approximate $300 monthly expenditure. Associates who fail to "meet their PV" are not entitled to *any* compensation, even where they have generated considerable sales for Truvy.[29]

49.    Defendants boast that Truvy has "helped millions of people to live happier, healthier lives."[30] Truvy messaging to potential Associates is, "this business can help someone in all aspects of their life from health to careers to their social interactions."[31] Of course, recruiting Associates also helped Defendants, who profited from the required PV garnered from each new recruit.

50.    On information and belief, approximately 75% of Truvy product sales are purchased by Associates, who are required to invest in and consume Truvy products through the contractual "PV" requirement. Although Associates are led to believe Truvy offers opportunities to generate "substantial income,"[32] quickly, on

---

[28] *Try. Share. Repeat. (How to Earn Money with Truvy)*, Truvy, https://truvy.com/opportunity?ref=www, (last visited June 27, 2023).

[29] *Compensation Plan*, Truvy, https://help.truvy.com/hc/en-us/articles/15514669409811-Compensation-Plan (last visited June 22, 2023).

[30] *About Us*, Truvy, https://www.truvy.com/about?ref=www (last visited June 22, 2023).

[31] *About Us*, Truvy, https://www.truvy.com/about?ref=www (last visited June 22, 2023).

[32] *Mission Statement*, Truvy, https://help.truvy.com/hc/en-us/articles/13124810796435-Mission-Statement (last visited June 23, 2023).

16

information and belief, 75% of the 100,000 Truvy Associates make less than $30 per month in exchange for their at least $150 in monthly Truvy product purchases. Defendants continually misrepresented and misrepresent the nature of income generation for Associates, by exaggerating the opportunities for compensation and by requiring Associates to purchase and sell Truvy products, including the Subject Products, whose operative ingredients were knowingly misrepresented.

51.    Defendants misrepresented to Plaintiffs and class members the nature and characteristics of the products they were required to purchase from Defendants and deceived them into promoting these products "downline" to additional purchasers.

52.    Plaintiffs and Class Members were encouraged through illusory "discounts" to sign up for auto renewal of product shipments.  Once enrolled, cancellation was difficult, requiring telephonic contact with Truvy customer service as no electronic auto-shipment cancellation option is offered through the Truvy ordering portal.

53.    The Truvy website claims that Associates who "choose to share Truvy," gain "greater financial stability and autonomy."[33] Truvy promotional materials promise that being a Truvy Associate "can provide a substantial income requiring little to no upfront costs," and "reduce the time spent worrying about finances resulting in more time to spend with family and friends."[34] Truvy promises to create "opportunity for our associates to earn a substantial income that is compatible with their schedule."[35]

54.    As part of the "reward system," Truvy Associates were provided with names of potential new customers to pursue.  On information and belief, these

[33] *Mission Statement*, Truvy, https://help.truvy.com/hc/en-us/articles/13124810796435-Mission-Statement (last visited June 23, 2023).

[34] *Id.*

[35] *Id.*

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

"customers" were generally fictional, and represented another deceptive practice Defendants used to encourage Associates and their downline team to consume, purchase and sell more product.

55.    The Truvy Road Map, above, is a page of the Truvy Compensation plan provided to Associates and potential Associates and available online.[36]  The plan promises trips, bonuses, gifts, and luxury experiences to Associates as part of their compensation "path."  In reality, on information and belief, most Associates pay far more—sometimes ten times more—for their required monthly "PV" than they make in compensation.

---

[36] *Compensation Plan*, Truvy, https://help.truvy.com/hc/en-us/articles/15514669409811-Compensation-Plan (last visited June 22, 2023).

1

**FRAUDULENT CONCEALMENT AND TOLLING**

2      56.      The applicable statutes are tolled by virtue of Defendants' knowing and

3   active concealment of the facts alleged above. Plaintiffs and class members were

4   ignorant of the information essential to the pursuit of these claims, without any fault

5   or lack of diligence on their own part.

6      57.      At the time the action was filed, Defendants were under a duty to

7   disclose the true character, quality, and nature of their activities to Plaintiffs and the

8   Class and Subclass. Defendants are therefore estopped from relying on a statute of

9   limitations.

10     58.      Defendants' fraudulent concealment is common to the Class and

11  Subclass.

12                    **CLASS ACTION ALLEGATIONS**

13     59.      Plaintiffs bring this nationwide class action on behalf of themselves

14  and a Class and Subclass defined as follows:

15              ***Class***:
16              *All United States current and former Truvy Associates*
17              *who purchased TruVision Health, LLC d/b/a "Truvy"*
                *products containing hordenine and/or octodrine/1,5-*
18              *dimelthylhexylamine ("DMHA") from 2014 through July*
                *1, 2023.*
19

20              ***Subclass***:
21              *All California current and former Truvy Associates who*
                *purchased TruVision Health, LLC d/b/a "Truvy"*
22              *products containing hordenine and/or octodrine/1,5-*
23              *dimelthylhexylamine ("DMHA") from 2014 through July*
                *1, 2023.*
24

25     60.      Excluded from the Class are governmental entities, Defendants, any

26  entity in which Defendants have a controlling interest, and Defendants' officers,

27  directors, legal representatives, and employees.  Also excluded from the Class is any

28

judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

61.    Plaintiffs reserve the right to modify the Class and Subclass descriptions and the Class period based on the results of discovery.

62.    Plaintiffs and the Class bring this action for equitable, injunctive, and declaratory relief pursuant to subdivisions (b)(1), (b)(2), (b)(3), and (c)(4) of Rule 23 of the Federal Rules of Civil Procedure.

63.    **Numerosity (Rule 23(a)(1)):** The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiffs believe that the members of the Class are numerous and geographically dispersed across the United States, and that the total number of Class members is at least in the thousands or tens of thousands. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. On information and belief, Truvy retains detailed records and contact information for all past and present customers, including names and volume of each product purchased, and date of purchase. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

64.    **Common Questions of Law and Fact Predominate (Rule 23(a)(2)):** There are many questions of law and fact common to the representative Plaintiffs and the Class and Subclass, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

> a.    Whether Defendants claim or have claimed that the operative ingredients in their Subject Products was a "proprietary blend" of natural ingredients, such as Raspberry Ketones, to promote weight loss while ensuring stable blood sugar and sustained energy.

b.    Whether the Subject Products actually caused weight loss due to the inclusion of stimulants such as hordenine and/or octodrine/DMHA, substances that are unapproved and unlawful and rendered the products adulterated;

c.    Whether or not Defendants misrepresented the safety, efficacy, and quality of their products, including the Subject Products;

d.    Whether or not Plaintiffs and the members of the Class and Subclass have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be afforded;

e.    Whether Defendants have engaged in unfair, unlawful and/or fraudulent business practices in their marketing and sale of Truvy dietary supplements;

f.    Whether Defendants misrepresented and exaggerated the income opportunities available to Associates who agree to sell Truvy dietary supplements;

g.    Whether Defendants have failed to disclose material facts about the Subject Products, including amounts of the unapproved ingredients in each product; that the ingredients are unapproved and illegal to include in supplements; and the material adverse side effects and possible drug interactions associated with the unapproved ingredients;

h.    Whether Defendants have breached the implied covenant of good faith and fair dealing with Plaintiffs and the Class.

65.    **Typicality (Rule 23(a)(3)):** Plaintiffs' claims are typical of the claims of the members of the Class and Subclass. Plaintiffs and all members of the Class have been similarly affected by Defendants' common course of conduct since Class members were required, as Associates, to regularly purchase Subject Products that

were unsafe, and not of the quality represented, despite Defendants' claims to the contrary. Plaintiffs were also promised economic benefits that were not typical for Truvy Associates and offered illusory incentives.

66.    **Adequacy of Representation (Rule 23(a)(4)):** Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

67.    **Superiority of a Class Action (Rule 23(b)(3)):** Plaintiffs and the members of the Class suffered, and will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct. Class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice.

68.    **Dispositive Adjudications (Rule 23(b)(1)):** Adjudication of individual class members' claims with respect to the Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication

and could substantially impair or impede the ability of other class members to protect their interests.

69.    **Final Declaratory or Injunctive Relief (Rule 23(b)(2)):** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(b)(2). Defendants have acted or refused to act on grounds that apply generally to the proposed Class and Subclass, making final declaratory or injunctive relief appropriate with respect to the proposed Class and Subclass as a whole.

70.    **Particular Issues (Rule 23(c)(4)):** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all Class and Subclass members and are capable of class-wide resolution that will significantly advance the litigation.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION: UNJUST ENRICHMENT
### (On behalf of the Entire Plaintiff Class)

71.    Plaintiffs incorporate by this reference the preceding allegations as if fully set forth herein.

72.    Through the conduct described herein, Defendants have received money belonging to Plaintiffs and the Class through the sale of supplements, including TruCONTROL 60-Count; TruControl 7-Day Trifold; reFORM; truControl with Dynamine 60-Count; TruWeight and Energy Gen 2+ 60 Count; TruWeight and Energy Gen 2+ Trifold; Truvy 30-Day Experience Kit; Truvy 7-Day Experience Kit; Truvy Boost 30-Day Experience Kit; TruBoost 7-Day Experience Kit; TruBoost Drink—Citrine Spark; and TruBoost Drink—Ruby Rev. Lots of each of these products were listed in the U.S. Food and Drug Administration Notice of April 27,

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

2023, as the subject of a recall for the presence of unapproved ingredients.[37] On information and belief, additional lot numbers and products also contained unapproved ingredients.

73.    Defendants have reaped substantial profit by misrepresenting and/or concealing the fact that numerous lots of their products regularly contained dangerous and illegal ingredients, the amounts of those ingredients, and the side effects associated with those ingredients.

74.    Ultimately, Defendants' conduct has resulted in Defendants' wrongful receipt of profits and injury to Plaintiffs and the Class. Defendants have benefited from the receipt of such money that they would not have received but for their misrepresentation and/or concealment, not only from the sale of the affected Subject Products but from the sale of other dietary supplements that consumers purchased assuming they were of a consistent quality and safety.

75.    As a direct and proximate result of Defendants' misconduct as set forth herein, Defendants have been unjustly enriched.

76.    Under principles of equity and good conscience, Defendants should not be permitted to keep the money belonging to Plaintiffs and the Class which Defendants have unjustly received as a result of their actions.

## SECOND CAUSE OF ACTION: FRAUD
### (On behalf of the Entire Plaintiff Class)

77.    Plaintiffs incorporate by this reference the preceding allegations as if fully set forth herein.

---

[37] *TruVision Health Recalls Dietary Supplement Products Because of Possible Health Risk*, FDA (Apr. 27, 2023), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/truvision-health-recalls-dietary-supplement-products-because-possible-health-risk.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

78.    As alleged herein, Plaintiffs are informed and believe and thereon allege that Defendants have made at least the following uniform material misrepresentations to Plaintiffs and the Class:

a.    Defendants claim that the operative ingredients in their Subject Products are natural and lawful and include Raspberry Ketones, Cinnamon Bark Extract, Potato Extract, Hydrolyzed Brewer's Yeast, and Magnesium, among others.

b.    In fact, the operative ingredients in the Subject Products were unapproved drugs linked to adverse health effects.  Those who ingest the supplements containing these ingredients may test positive in drug tests for the presence of amphetamines.

c.    Defendants also misrepresented the quality and characteristics of their manufacturing process by claiming Truvy dietary supplements, including the Subject Products, were "safe and effective."

d.    Defendants mispresented the quality of all their products by including unsafe ingredients in some of their products and failing to disclose adverse side effects.

e.    Defendants misrepresented that potential associates could quickly generate "substantial income," with limited upfront costs.

f.    Defendants mispresented the benefits and bonuses related to becoming a Truvy Associate, implying that earning "substantial income" was a typical outcome, when over 75% of Associates make less than $30 per month but are required to spend up to ten times that amount in required "PV."

79.    Plaintiffs are informed and believe and thereon allege, that in their above conduct, Defendants acted fraudulently and deceitfully with knowledge that Plaintiffs and the Class would rely on their actions and omissions. Defendants made

the aforesaid material representations and/or concealed material facts to induce Plaintiffs and the Class to act in reliance on the misrepresentations and fraudulent statements.

80.     Plaintiffs and the Class at all times did reasonably and justifiably rely both directly and indirectly on the actions and representations of Defendants.

81.     As a direct and proximate result of Defendants' fraud, Plaintiffs and the Class have suffered actual damages in an amount not presently known, but which will be shown by proof at the time of trial, including incidental and consequential damages, interest, and reasonable attorneys' fees.

82.     Plaintiffs are informed and believe and thereon allege that Defendants undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiffs and the Class, and did so with fraud, oppression, and malice. Therefore, Plaintiffs and the Class are also entitled to punitive damages against Defendants in an amount that will be shown by proof at trial.

**THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION**
**(On behalf of the Entire Plaintiff Class)**

83.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

84.     Plaintiffs bring this claim individually and on behalf of the proposed Class against Defendants.

85.     Defendants misrepresented the nature, quality, and ingredients of multiple lots of the Subject Products. Defendants had a duty to disclose this information, including the unapproved status of the operative ingredients, the fact that the presence of these substances rendered the products adulterated, the amount of undisclosed ingredients in each product, and the adverse health effects associated with ingestion of the unapproved ingredients.

/ / /

86.    At the time Defendants made the false claims and representations, Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

87.    Defendants negligently misrepresented and omitted material facts about the Subject Products, in that they represented the Subject Products and all of their dietary supplements were "safe [and] effective."

88.    In fact, the Subject Products contained unapproved ingredients. Plaintiff and Class members relied upon Defendants negligent statements or omissions and were deceived and induced into purchasing the Subject Products and other Truvy Dietary Supplements or purchasing them at a higher price than they otherwise would have paid.

89.    The negligent misrepresentations and/or omissions made by Defendants, upon which Plaintiff and the Proposed Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and the Class members to purchase Defendants' products, including the Subject Products.

90.    Plaintiff and Class members would not have purchased the Subject Products, and/or would not have paid a price premium for the products if the true facts had been known to them regarding the falsity of Defendants' claims and Defendants' material omissions.

91.    Defendants' negligence caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## FOURTH CAUSE OF ACTION:  VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, *ET SEQ.*
### (On behalf of the California Subclass)

92.    Plaintiffs incorporate the preceding allegations as if fully set forth herein.

/ / /

93.    California's False Advertising Law ("FAL"), Bus. & Prof. Code §§17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

94.    Plaintiff Deborah Garcia has standing to pursue this claim as Plaintiff Garcia, a resident of Monterey County, California, has suffered injury in fact and lost money or property as a result of Defendants' actions as set forth herein.

95.    This cause of action is brought on behalf of the California Subclass in accordance with the provisions of California Business and Professions Code §17500. Members of the California Subclass have lost money or property as a result of Defendants' actions as set forth herein.

96.    Defendants committed acts of false advertising, as defined by the FAL, by using false and misleading statements, and material omissions, to promote the sale of the Subject Products and including, but not limited to, representing that the Subject Products and other Truvy Products were safe and effective, and did not contain any other illegal, unapproved, or hazardous ingredients.

97.    Defendants' failure to disclose material information about the product ingredients, including the amount and dosage of unapproved ingredients and side effects associated with those ingredients, violates the FAL.

98.    Defendants' failure to disclose material information about the actual average compensation earned by Truvy Associates, including net negative income for the vast majority of Associates, violates the FAL.

99.    Defendants committed acts of false advertising, as defined by the FAL, by using false and misleading statements, and material omissions, to recruit

"Associates" in a pyramid scheme to expand Truvy product sales and lock consumers into continuous and expensive shipments of Truvy products. While Associates were and are led to believe that they could expect "substantial income," bonuses, trips, and "luxury experiences" as Truvy Associates, on information and belief, most Associates made and make far less than the monthly required product purchase amounts.

100.    Defendants knew or should have known, through the exercise of reasonable care, that their representations as to products and income opportunities for Associates, including Plaintiffs and Class Members, were untrue and misleading.

101.    Defendants actions and omissions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

102.    As a direct and proximate result of these acts and omissions, consumers have been and are being harmed. Plaintiff Garcia and members of the California Subclass have suffered injury and actual out-of-pocket losses as a result of Defendants FAL violations because: (a) Plaintiff Garcia and Class members in California would not have purchased, or would not have purchased for a the premium price, the Subject Products or Defendants' other dietary supplements had they known the extent of deceptive and unsafe practices associated with the products' manufacture; (b) Plaintiff Garcia and Class members in California purchased the Subject Products induced by Defendants' misrepresentations and omissions; and (c) the Subject Products did not have the level of quality, ingredients or value promised.

103.    As a direct and proximate result of Defendants' acts and omissions, consumers have been and are being harmed. Plaintiff Garcia and members of the California Subclass have suffered injury and actual out-of-pocket losses as a result of Defendants FAL violations because: a) Truvy Associates would not have contracted with Truvy to promote the sale of adulterated and illegal products had they been aware that the Subject Products contained unapproved and dangerous ingredients; and b) Associates would not have agreed to promote, market and sell

Truvy products had they been made aware that most Associates never attain the promised levels of "substantial income" promised by Defendants.

104.    Plaintiffs bring this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendants to issue refunds to consumers. Plaintiff Garcia and California Class members are therefore entitled to: (a) an order requiring Defendants, and each of them, to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

## FIFTH CAUSE OF ACTION: VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 *ET SEQ.*
### (On behalf of the California Subclass)

105.    Plaintiffs incorporate by this reference the preceding allegations as if fully set forth herein.

106.    Plaintiff Deborah Garcia has standing to pursue this claim as Plaintiff Garcia, a resident of Monterey County, California, has suffered injury in fact and lost money or property as a result of Defendants' actions as set forth herein.

107.    This action is brought on behalf of the California Subclass in accordance with the provisions of California Business and Professions Code § 17204. Members of the Plaintiff California Subclass have lost money or property as a result of Defendants' actions as set forth herein.

108.    Defendants' actions as alleged in this complaint constitute unfair and deceptive business practices within the meaning of California Business and Professions Code §17200 in that Defendants' actions are unfair, unlawful, and fraudulent, and because Defendants have made unfair, deceptive, untrue or misleading

statements in advertising media, including the Internet, within the meaning of California Business and Professions Code §§17500, *et seq.*

109. Defendants' actions as alleged in this complaint constitute an unfair or deceptive business practice within the meaning of California Business and Professions Code §17200 in that Defendants' actions are violative of the California Consumer Legal Remedies Act (CLRA), within the meaning of California Civil Code §§ 1750, *et seq.*

110. Defendants' business practices, as alleged herein, offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious as California class members were misled by Defendants' misrepresentations about the Subject Products and their concealment of material information about the unapproved and adulterated status and adverse side effects associated with Subject Product ingredients.

111. Defendants' business practices as alleged herein are fraudulent because they deceived customers into believing that the Subject Products were safe and effective when they were not.

112. Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct of unfair competition since Defendants were and are marketing and selling their products in a manner likely to deceive the public, and were and are making representations about income opportunities that are also false and misleading.

113. Defendants violated the Business and Professions Code section 17200 unlawful prong by:

a. Misrepresenting the nature and quality of the Subject Products and other products, when they knew or should have known of the regular presence of the unapproved ingredients and their side effects, in violation of Business and Professions Code section 17500. Plaintiff Deborah Garcia, and the Subclass of California Plaintiffs, relied on these misrepresentations and omissions, and

1    suffered economic injury as a result;

2    b.    Grossly overstating and misrepresenting the "substantial income

3          opportunities" for Truvy Associates in their marketing campaign

4          to expand Truvy Associate purchases, in violation of Business

5          and Professions Code section 17500.  Plaintiff Garcia and the

6          California Subclass suffered economic loss as a result of these

7          false, misleading and fraudulent misrepresentations and material

8          omissions , such as that the average income of a Truvy Associate

9          was $30 or less, after a required $150-300 in monthly product

10         purchases; and

11    c.    Misrepresenting the qualities, characteristics, nature and/or

12         sponsorship of the Subject Products and other Truvy Products, in

13         violation of California Civil Code section 1770 et seq.

14    114.  Defendants' wrongful business practices have caused injury to Plaintiff

15    Garcia and the California Subclass.

16    115.  Pursuant to § 17203 of the California Business and Professions Code,

17    Plaintiff Garcia and the California Subclass seek an order of this court enjoining

18    Defendants from continuing to engage in unlawful, unfair, or deceptive business

19    practices and any other act prohibited by law, including those set forth in the

20    complaint. Plaintiff Garcia and the California Subclass also seek an order requiring

21    Defendants to make full restitution of all moneys wrongfully obtained from Plaintiff

22    and California Subclass members.

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

**SIXTH CAUSE OF ACTION: VIOLATION OF CALIFORNIA CONSUMER**

**LEGAL REMEDIES ACT**

**Cal. Civ. Code §§ 1750, *et seq.***

**(On behalf of the California Subclass)**

116.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

117.    This claim is brought on behalf of the members of the California Subclass residing to seek injunctive relief against Defendants under California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

118.    Defendants, and each of them, are "persons" as defined by the CLRA. Cal. Civ. Code § 1761(c).

119.    Plaintiff Garcia and California Subclass members are "consumers" within the meaning of the CLRA, as defined by Cal. Civ. Code § 1761(d), who purchased Truvy products, including the Subject Products.

120.    The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

121.    Defendants engaged in unfair or deceptive trade practices that violated Cal. Civ. Code § 1770(a), as described above and below, by, among other things, failing to disclose the defective nature of the Subject Products, representing that the Subject Products had characteristics and benefits that they do not have (e.g., safety, efficacy, and "natural" ingredients), representing that the Subject Products were of a particular standard, quality, or grade when they were of another, and advertising the Subject Products with the intent to misrepresent their fundamental characteristics and ingredients. *See* Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(9) and (a)(16).

122.    Defendants, and each of them, knew, should have known, or were reckless in not knowing that the Subject Products did not have the qualities,

characteristics, and functions they represented, warranted, and advertised them to have.

123.   Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and imposed a safety risk to Plaintiff Garcia and Class members residing in California.

124.   Defendants were under a duty to Plaintiff Garcia and Class members residing in California to disclose the deceptive and defective nature of the Subject Products because:

a.   The undisclosed and dangerous ingredients presented a safety hazard because Class members could jeopardize their health by relying on the inaccurate label disclosures and advertising.

b.   Defendants were in a superior position to know the true state of facts about Truvy products, including the Subject Products.

c.   Plaintiff Garcia and Class members could not reasonably have been expected to learn or discover that lots of the Subject Products were tainted with unapproved ingredients linked to harmful side effects.

d.   Defendants knew that Plaintiffs and Class members could not reasonably have been expected to learn or discover the defect and the extent of the defect in the Subject Products.

125.   In failing to disclose the defective nature of the Subject Products, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

126.   The facts that were misrepresented, concealed, or not disclosed by Defendants to Plaintiff Garcia and California Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Subject Products. Had Plaintiff Garcia and other

34

Class members residing in California known about the true nature and quality of the Subject Products, they would not have purchased the Subject Products or would not have paid the premium price for them.

127.    Plaintiff Garcia and California Subclass members are reasonable consumers who expected that the products they purchased from Truvy were of the quality and contained the ingredients that were represented in the marketing of the products.

128.    As a result of Defendants' conduct and unfair or deceptive acts or practices, Plaintiff Garcia and California Subclass members suffered actual damages in that the products were not as represented and Defendants deprived Plaintiffs and Class members the benefit of the bargain.

129.    Plaintiff Garcia and California Subclass members seek an order enjoining Defendants' unfair or deceptive acts or practices.

130.    In accordance with § 1782(a) of the CLRA, on July 10, 2023, counsel for Plaintiffs served Defendants with notice of their alleged violations of Cal. Civ. Code § 1770(a) relating to the adulterated, misbranded, and deceptive nature of the Truvy products, including the Subject Products, purchased by Plaintiffs and Class members. Plaintiffs' letters, delivered via certified mail with return receipt, are filed concurrently as Exhibit 1 to this Complaint.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs and members of the Class request the Court enter an order or judgment against Defendants as follows:

1.    Certification of the proposed class, designating Plaintiffs as the Class Representatives and Plaintiffs' attorneys as Class Counsel, and notice thereto to be paid by Defendants;

2.    Adjudge and decree that Defendants have engaged in the conduct alleged herein, finding for Plaintiffs on all counts alleged herein;

3. Notice to the Class members about the true nature of the Subject Products and that they are defective, dangerous, and contain undisclosed and illegal ingredients;

4. For full restitution, disgorgement of ill-gotten gains, and all other appropriate forms of equitable monetary relief on certain causes of action;

5. For an injunction ordering Defendants to cease and desist from engaging in the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

6. For an injunction ordering Defendants to correct, destroy, and change all false and misleading labeling and website-based representations relating to the Subject Products, Truvy products generally as well as all false, misleading, and deceptive representations about income potential as a Truvy Associate;

7. For compensatory, exemplary, punitive, statutory, and general damages as allowed by law, according to proof on certain causes of action in an amount to be proven at trial;

8. For both pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded;

9. For costs of the proceedings herein;

10. For reasonable attorneys' fees as allowed by statute; a

11. Leave to amend this Complaint to conform to evidence produced at trial; and

12. Any and all such other and further relief that this Court may deem just and proper.

/ / /

/ / /

/ / /

36

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

DATED:  July 13, 2023

**/s/ Tracy E. Hughes**

Tracy E. Hughes, State Bar No. 180494
*thughes@robinsonfirm.com*
Mark P. Robinson, Jr., State Bar No. 54426
*mrobinson@robinsonfirm.com*
Kevin F. Calcagnie, State Bar No. 108994
*kcalcagnie@robinsonfirm.com*
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, California 92660
Tel:   949-720-1288
Fax:   949-720-1292

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil procedure Section 38(b), Plaintiff and the Class demand a trial by jury on all issues so triable.

DATED:  July 13, 2023

**/s/ Tracy E. Hughes**

Tracy E. Hughes, State Bar No. 180494
*thughes@robinsonfirm.com*
Mark P. Robinson, Jr., State Bar No. 54426
*mrobinson@robinsonfirm.com*
Kevin F. Calcagnie, State Bar No. 108994
*kcalcagnie@robinsonfirm.com*
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, California 92660
Tel:   949-720-1288
Fax:   949-720-1292